IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| County of Lexington, ) | |
| ) | Case No. 3:18-cv-2357-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Rite Aid of South Carolina, Inc.; ) | |
| Purdue Pharma, L.P.; Purdue Pharma, ) | |
| Inc.; The Purdue Frederick Company, ) | |
| Inc.; Teva Pharmaceuticals USA, Inc.; ) | |
| Cephalon, Inc.; Johnson & Johnson; ) | |
| Janssen Pharmaceuticals, Inc.; ) | |
| Ortho-McNeil-Janssen ) | |
| Pharmaceuticals, Inc. n/k/a Janssen ) | |
| Pharmaceuticals, Inc.; Janssen ) | |
| Pharmaceutica, Inc. n/k/a Janssen ) | |
| Pharmaceuticals, Inc.; Endo Health ) | |
| Solutions Inc.; Endo Pharmaceuticals, ) | |
| Inc.; Allergan PLC f/k/a Actavis PLC; ) | |
| Actavis Inc. f/k/a Waston Pharmaceuticals, ) | |
| Inc.; Watson Laboratories, Inc.; Actavis ) | |
| LLC; Actavis Pharma, Inc. f/k/a ) | |
| Watson Pharma, Inc.; Insys ) | |
| Therapeutics, Inc.; McKesson ) | |
| Corporation; Cardinal Health, Inc.; ) | |
| Amerisourcebergen Corporation; ) | |
| CVS Pharmacy, Inc.; CVS Health ) | |
| Corporation; Leavis Sullivan; Mark Waldrop; ) | |
| Aathirayen Thiyagarajah; Pain and Spine ) | |
| Consultants, PA; John Doe 1; John Doe 2; ) | |
| Clinic 1; and Clinic 2, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This action was originally filed in the Court of Common Pleas, Lexington County, South Carolina, and removed by Defendants Johnson & Johnson and Janssen Pharmaceuticals, Inc. (the "Removing Defendants"), to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1 at 2.) This matter is before the Court on Plaintiff Lexington County's ("Plaintiff" or "Lexington County") Emergency Motion to Remand and for an Expedited Ruling

(ECF No. 5). The Removing Defendants filed a response opposing Plaintiff's motion to remand, in which they request that the Court stay this action pending transfer into *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804. (*See* ECF No. 18 at 12-15.) Plaintiff filed a reply. (ECF No. 19.) These matters are ripe for adjudication and the Court now issues the following ruling.

## I. Background/Procedural History

In its 114-page Complaint (ECF No. 1-2), Lexington County alleges that it seeks to address the opioid epidemic and recoup the costs it has incurred and continues to incur because of it. (*See id.*) Plaintiff asserts the following claims: (1) violations of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39-5-10 et seq.;  (2) common law fraud; (3) unjust enrichment; (4) negligence; (5) negligent misrepresentation; (6) public nuisance; (7) constructive fraud; and (8) negligence per se. (*Id. ¶¶* 338-412.) Plaintiff names twenty-seven (27) Defendants, and an additional two John Does and two unnamed clinics as Defendants. These Defendants can be grouped into four categories: (1) the Manufacturer Defendants; (2) the Distributor Defendants; (3) the Sales Representatives or Employee Defendants; and (4) the physicians and/or their clinics, which Plaintiff refers to as the "Dealer" Defendants in this action. Prior to the filing of this action, the Judicial Panel on Multidistrict Litigation ("JPML") created a Multidistrict Litigation ("MDL") in the Northern District of Ohio for cases in which "cities, counties and states . . . allege that . . . manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians." *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. Dec. 5, 2017). A secondary theory common to the actions addressed in the MDL is that "distributors failed to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates." *Id.*

The Removing Defendants removed this case on the basis of putative diversity

jurisdiction. (ECF No. 1 at 2, 6-7). It is undisputed that Lexingon County is a South Carolina citizen, that removal was timely, and that the amount in controversy exceeds $75,000. It is further undisputed that there are several non-diverse Defendants. However, the Removing Defendants contend that the unidentified John Does and the unnamed clinics should be ignored; that the Distributor and Dealer Defendants should be severed or, alternatively, are fraudulently misjoined; and that the Employee Defendants are fraudulently joined. (*See* ECF No. 1.)

Additionally, in their response to the motion to remand, the Removing Defendants contend that the Court should stay this action, including any decision regarding remand, pending a final decision from the JPML on transfer to the MDL. (*see* ECF No. 31 at 8, 12-15) In all likelihood, the JPML will soon issue a Conditional Transfer Order ("CTO") in this case, conditionally transferring this action to the MDL in the same way three previous cases in this district were conditionally transferred. *See Cty. of Greenville v. Rite Aid of S.C., Inc. et al.*, C.A. No. 6:18-cv-1085-TMC, ECF No. 66 (D.S.C. May 21, 2018) ("*Greenville County*"); *Cty. of Spartanburg v. Rite Aid of S.C., Inc. et al.*, C.A. No. 7:18-cv-01799-BHH, ECF No. 32 (D.S.C. July 25, 2018) ("*Spartanburg County*"); *Cty. of Anderson v. Rite Aid of S.C., Inc. et al.*, C.A. No. 8:18-cv-01947-BHH, ECF No. 44 (D.S.C. Aug. 20, 2018) ("*Anderson County*"). The MDL Court has issued a moratorium on all substantive filings, including motions to remand, and has indicated that it is not going to rule on any pending motions to remand at the present time.

## II. Standard

Federal courts are courts of limited jurisdiction, and a federal court must carefully guard to ensure that all cases before it are properly subject to its jurisdiction. *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Moreover, because federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction. *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999).

Federal diversity jurisdiction exists where the amount in controversy exceeds $75,000 and complete diversity is present. 28 U .S.C. § 1332. "In order to establish diversity jurisdiction, the parties must be completely diverse; none of the plaintiffs may share citizenship with any of the defendants." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435 (4th Cir. 1999). In cases in which the jurisdiction is based on diversity of citizenship, the burden of establishing federal jurisdiction rests upon the party seeking removal. *Mulcahey v. Columbia Organic Chem. Co. Inc.*, 29 F.3d 148, 151 (4th Cir. 1994) (holding that the burden is on the removing defendant to establish subject matter jurisdiction). If federal jurisdiction is doubtful, remand is necessary. *Id.*

### III.  Discussion

#### A. Request to Stay

In the motion to remand, Plaintiff contends that the Court lacks subject matter jurisdiction because complete diversity between the parties is not present. The Removing Defendants, in their opposition, argue that the Court should stay this action pending transfer to the MDL, in order to promote the purpose of the MDL statute, conserve judicial and party resources, and allow the MDL court to uniformly address the remand issue in similar cases. (ECF No. 18 at 12-15.) The Removing Defendants also contend that continued proceedings in this case would result in expensive, duplicative, and potentially wasteful work, in the event that the JPML transfers this case to the MDL. (*Id.* at 13.) Moreover, they claim that Lexington County will not be prejudiced by a stay, "which will be short and should not significantly impact the progress of these proceedings." (*Id.* at 14.)

Plaintiff replies that the Court should not stay a decision on the remand motion because the motion raises clear and straightforward challenges to federal jurisdiction that have already been resolved in favor of remand in parallel cases. (*See* ECF No. 19 at 2-3.) *See also Spartanburg County*, Remand Order, ECF No. 32 at 4-7; *Anderson County*, Remand Order, ECF

4

No. 44 at 5-8.

Whether to grant or deny a request for a stay is a discretionary decision within the inherent powers of the Court "'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Murphy-Pittman v. DePuy Orthopaedics, Inc.*, No. 3:12-cv-3179-JFA, 2012 WL 6588697, at *1 (D.S.C. Dec. 17, 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). When deciding a motion to stay, a court should consider: "'(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.'" *Id.* (quoting *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001)).

The Court notes, as it has in previous parallel cases, that the MDL judge has stated that he is not going to act on any motions to remand, and has placed a moratorium on filing such motions. As was true in the *Greenville County*, *Spartanburg County*, and *Anderson County* cases, the question of remand is particularly appropriate for this Court to resolve because if this Court lacks jurisdiction, then the MDL court lacks jurisdiction as well. *See, e.g.*, *Stephens v. Kaiser Foundation Health Plan*, 807 F. Supp. 2d 375, 381 (D. Md. 2011) (noting that the requirement of complete diversity applies to the district court and the MDL court alike). With regard to judicial economy, the Court finds that granting a stay would *not* promote judicial economy in any meaningful way because it would defer decision on the remand motion to the MDL court, even though virtually identical issues, concerning materially identical parties, have already been briefed, argued, and decided in this District. In fact, a very real opportunity for judicial economy would be lost because the *Greenville County*, *Spartanburg County*, and *Anderson County* cases, would proceed in State Court[1] while this case languished, with no

---

[1] The Court notes that the Supreme Court of South Carolina issued an order assigning "a single circuit judge to dispose of all matters arising out of the opiod litigation *currently pending and to be filed* in the state court system" in order to "promote the effective and expeditious disposition of this litigation

5

indication of when questions of remand would ultimately be addressed en masse as part of the MDL. Respecting any hardship or inequity that might result to the Removing Defendants if a stay is not granted, the Court finds that no such hardship would result. The Removing Defendants have already expended the work necessary to litigate against remand–and lost repeatedly. By seeking a stay here, the Removing Defendants are simply attempting to obtain a different result in a different forum–the MDL court. Moreover, the Court finds that there is a real risk that prejudice would result to Plaintiff if a stay was granted, because Lexington County would be forced to sit on the sidelines for an indeterminate period while its sister counties pursued identical claims against an almost identical list of Defendants, perhaps even resulting in preclusive effects against Plaintiff's own claims without Plaintiff meaningfully contributing to the course of the litigation. This is even more true now that the Supreme Court of South Carolina has established a consolidated proceeding for pending and future opiod litigation in South Carolina. (*See* n.1 *supra*.) Furthermore, as explained below, the Court finds that the jurisdictional questions at issue are relatively straightforward in this case. Accordingly, the request for a stay is denied and the Court finds it appropriate to rule on the motion to remand at this time.

### B. Fraudulent Joiner and Fraudulent Misjoinder

The Removing Defendants first argue that the motion to remand should be denied because of fraudulent joinder of the Employee Defendants. Alternatively, the Removing Defendants argues that the Court should apply the doctrine of fraudulent misjoinder to the Distributor and Dealer Defendants.

> Fraudulent joinder and fraudulent misjoinder are two distinct legal
> doctrines that provide exceptions to the well-pled complaint rule as

---

through uniform rulings and . . . conserve the resources of the parties, their counsel, and the judiciary." (ECF No. 5-6 (emphasis added).)

> it applies to removal based on diversity jurisdiction by allowing courts to disregard the citizenship of certain parties. Fraudulent joinder is applicable where a defendant seeking removal argues that other defendants were joined when there is no possible cause of action against those defendants or where the complaint pled fraudulent facts. Fraudulent misjoinder, on the other hand, is an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal.

*Wyatt v. Charleston Area Med. Ctr.*, 651 F. Supp. 2d 492, 496 (S.D.W. Va. 2009) (internal citations omitted). Unlike fraudulent joinder, fraudulent misjoinder has thus far not been widely recognized in the federal courts. Construction and Application of Fraudulent Misjoinder Exception to Complete Diversity Rule, 65 A.L.R. Fed. 2d 527 (originally published in 2012). The Fourth Circuit Court of Appeals has not addressed this issue, and while some district courts in South Carolina have applied it, other district courts in South Carolina have declined to adopt it. *Palmetto Health All. v. S.C. Elec. & Gas Co.*, No. 3:11-cv-2060-JFA, 2011 WL 5027162, at *2 (D.S.C. Oct. 21, 2011) (stating that "[a]bsent direction from the Fourth Circuit, this court declines to adopt fraudulent misjoinder and accept jurisdiction over this case"); *Beaty v. Bridgestone America's Tire Operations, LLC*, No. 4:10-3303-RBH, 2011 WL 939001, at *3 (D.S.C. Mar. 16, 2011) (declining to adopt and stating there is "no Fourth Circuit Court of Appeals authority to place procedural misjoinder at the same level as fraudulent joinder").

> Not only are district courts split on whether to recognize and apply the doctrine of procedural misjoinder, they are also split on what standard applies in order to show misjoinder, and what result should be reached under the doctrine if it is applied. *See T.F. ex rel. Foster v. Pfizer, Inc.*, No. 12-1221, 2012 WL 3000229 at **2-3 (E.D. Mo. 2012)[Applying egregious standard discussed in *In re Prempro*]; *Pate v. Boston Scientific Corp.*, No. 13-6321, 2013 WL 5743499 at *5 (C.D. Cal. Oct. 21, 2013)[Applying a clear and convincing standard, and finding that the Defendant's speculation [of improper joinder] does not rise to the level of clear and convincing evidence. "Even if the Court were to accept Defendant's assertion that it is not plausible–and it is not clear that accepting Defendant's assertion would be appropriate–it is still possible that Plaintiffs' claims do arise out of the same transactions or occurrences. Without any kind of showing that Plaintiffs' are

7

> improperly joined, Defendant's efforts do not meet the requisite clear and convincing evidence standard."]; *Walton v. Tower Loan*, 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004)[requiring a "level of misjoinder that was not only improper, but grossly improper."]; *Asher v. Minn. Mining and Mfg. Co.*, No. 04-522, 2005 WL 1593941 at *7 (E.D. Ky. June 30, 2005)[applying the same "reasonable basis" standard for fraudulent misjoinder as in fraudulent joinder]; *J.C. ex rel. Cook v. Pfizer, Inc.*, 2012 WL 4442518 at *4 (S.D.W. Va. 2012)[Not applying the egregious standard and instead finding that "Defendants must demonstrate that Plaintiffs fail to meet either or both of the requirements for joinder: 1) the claims must arise out of the same transaction, series of transactions, or occurrence; and 2) some question of law or fact common to all parties must be present."]; *but cf. Stinnete v. Medtronic Inc.*, No. 09-3854, 2010 WL 767558 (S.D. Tex. Mar. 3, 2010)[Finding that "[a] multitude of cases around the country have held that plaintiffs were not properly joined when the only common link among them was a defective drug or medical device."].

*In re Lipitor (Atorvastatin Calcium) Mktg. Sales Practices & Prod. Liab. Litig.*, No. 2:14-mn-2502-RMG, 2016 WL 7373887, at *19 (D.S.C. July 14, 2016).

### i. Fraudulent Joinder

The fraudulent joinder doctrine enables a district court to "'disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction.'" *Johnson v. Am. Towers, LLC,* 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)).

> "Fraudulent joinder" is a term of art, it does not reflect on the integrity of [the] plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if there is no real intention to get a joint judgment, and there is no colorable ground for so claiming.

*AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (alterations, internal quotation marks, and citation omitted). "To establish fraudulent joinder, the removing party must show either: (1) outright fraud in the plaintiff's pleading of jurisdictional facts, or (2) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Toney v. LaSalle Bank Nat. Ass'n*,

8

36 F. Supp. 3d 657, 663 (D.S.C. 2014) (*citing Benjamin v. Wal-Mart Stores, Inc.*, 413 F. Supp. 2d 652, 654 (D.S.C. 2006)).

"The party alleging fraudulent joinder bears a heavy burden–it must show that the plaintiff cannot establish a claim [against the non-diverse defendant] even after resolving all issues of law and fact in the plaintiff's favor." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). The Fourth Circuit Court of Appeals has described this standard as "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* (citations omitted). "To defeat an allegation of fraudulent joinder, the plaintiff need establish 'only a slight possibility of a right to relief.'" *Hughes v. Wells Fargo Bank, N.A.*, 617 Fed. App'x 261, 264 (4th Cir. 2015) (*quoting Mayes*, 198 F.3d at 464). Moreover, in evaluating whether an attempted joinder is fraudulent, a court is not bound by the allegations of the complaint but can "consider the entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464. Additionally, this Court is required to "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Hartley*, 187 F.3d at 425.

The Removing Defendants do not argue that Lexington County does not have or has not alleged a claim against the Employee Defendants. Rather, the Removing Defendants argue that Anderson County has no real intention of obtaining a judgment against the Employee Defendants. (ECF No. 1 at 10-13.)

The Removing Defendants rely on nonbinding case law from district courts or other circuits, which have held that a defendant is fraudulently joined where a plaintiff has no intention of prosecuting the claim or seeking a joint judgment. The Fourth Circuit Court of Appeals has used the phrase "'no real intention to get a joint judgment'" on at least one occasion when discussing fraudulent joinder. *See Aids Counseling and Testing Centers v. Group W.*

9

*Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (quoting *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979)). However, in *Aids Counseling*, the Fourth Circuit noted that a joinder was fraudulent where no such intention existed *and* where there is no colorable ground for claiming that such an intention exists. *Id.* (stating that "a joinder is fraudulent if there is no real intention to get a joint judgment, and there is no colorable ground for so claiming" (internal modifications, quotation marks, and citation removed)); *see Willard v. United Parcel Servc.*, 413 F. Supp. 2d 593, 599 (M.D.N.C. 2006) (noting that *Aids Counseling* addressed both factors). *See also Englemen v. Johnson & Johnson*, No. 5:10-CV-173-BO, 2011 WL 52364, at *2 (E.D.N.C. Jan. 5, 2011) (remanding case to state court where plaintiffs could state a claim notwithstanding defendants' contention that plaintiffs had no intention of pursuing a claim against non-diverse defendant); *Myers v. Air Serv Corp.*, No. 1:07-cv-911, 2008 WL 149136, at *2 (E.D. Va. Jan. 9, 2008) (holding that "the crucial question pertains to the likelihood of liability, not the likely success of collection efforts"). Accordingly, a plaintiff's intention not to seek a judgment alone should not be a ground for a finding of fraudulent joinder. There also must be the absence of a basis for a claim. *Id.* Here, Lexington County has a colorable claim against the Employee Defendants.

As described in the filings in this case and in the cited authority from decisions from courts around the country handling similar litigation, the prescription drug supply system in the United States involves manufacturers, wholesale distributors, large chain pharmacies, community pharmacies, hospitals and other medical facilities, and licensed prescribers, all of whom are involved, at one stage or another and in one capacity or another, of delivering prescription drugs to patients, who are the consumers. This delivery of prescription drugs takes place within a complex system that controls the price and flow of drugs in America. It is supposed to be a closed system in the sense that, according to laws and regulations cited in the

Complaint, safeguards should be in place along the distribution chain to prevent prescription drugs from being diverted anywhere other than legitimate medical, scientific, and industrial channels. All of the Defendants are involved in the supply chain that delivers prescription drugs, including opioids, to patients. Based on the foregoing, the Court finds the Removing Defendants have failed to make a showing that the Employee Defendants were fraudulently joined.[2]

### ii. Fraudulent Misjoinder

Alternatively, the Removing Defendants argue for the application of fraudulent misjoinder in regard to the Distributor and Dealer Defendants. However, the Court need not decide whether or not to adopt and apply the doctrine of fraudulent misjoinder as a basis for federal jurisdiction because the Complaint contains sufficient allegations as to those Defendants that are citizens of South Carolina, including Rite Aid of South Carolina, Pain and Spine Consultants, PA, and the other South Carolina citizens. The claims against these Defendants as alleged in the Complaint, clearly have a logical relationship to one another and arise from the same or substantially related series of transactions and occurrences. At the very least, as indicated above, the claims against the Manufacturer Defendants and the Distributor and Dealer Defendants are logically related, as all of these defendants are integral players in the prescription drug supply chain that provides opioids and other prescription drugs to people in South Carolina.

In light of these findings and, given the absence of direction from the Fourth Circuit and

---

[2]The Complaint alleges that the Employee Defendants, LeAvis Sullivan and Mark Waldrop, are citizens and residents of South Carolina. (ECF No. 1-2 ¶¶ 61-62.) Lexington County also alleges that Defendant Aathirayen Thiyagarajah is a citizens of South Carolina, that Defendant Pain and Spine Consultants, PA, is a South Carolina legal entity, and that the John Doe defendants have their principal places of business in South Carolina. (*Id.* ¶¶ 63-65.) Moreover, Lexington County alleges that Defendant Rite Aid of South Carolina, Inc., was incorporated in South Carolina in 1977 and has various locations throughout the State, including within Lexington County. (*Id.* ¶¶ 53-54.) Therefore, even if the Employee Defendants are disregarded for purposes of federal jurisdiction, the Complaint contains sufficient allegations as to other South Carolina citizens or entities which would destroy diversity and justify remand.

11

the unsettled state of the law governing the doctrine of fraudulent misjoinder, including the variance and lack of consistency in its application by courts that have applied it, the Court declines to adopt fraudulent misjoinder to find jurisdiction in this case.

### C. Severance

In their opposition to the motion to remand, the Removing Defendants contend that the Court should sever the Distributor Defendants and Dealer Defendants pursuant to Federal Rule of Civil Procedure 21. (ECF No. 18 at 22-29.) Lexington County contends that, under the circumstances of this case, the Court should not exercise its Rule 21 discretion to supercede Plaintiff's pleading decisions in order to manufacture federal jurisdiction where it otherwise does not exist. (ECF No. 5-1 at 14-18.)

As a general matter, Rule 21 permits the Court to sever an unnecessary and dispensable party from a case in order to achieve complete diversity and establish proper jurisdiction over a civil action. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989); *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 691 (4th Cir. 1978) ("[N]on-diverse parties whose presence is not essential under Rule 19 may be dropped to achieve diversity between the plaintiffs and defendants."). However, some courts have disagreed as to whether it is proper to sever a non-diverse defendant in a diversity case removed to federal court absent a finding of fraudulent joinder or fraudulent misjoinder.

The Court must consider whether dismissal of the non-diverse party or parties will prejudice any of the parties remaining in the case, and whether the presence of the non-diverse party provides a tactical advantage for one party. *Newman-Green*, 490 U.S. at 838. Additionally, the Court must evaluate whether a party is necessary and indispensable under Rule 19. *See Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 705 (D. Md. 2015) (explaining that evaluation of whether a party is necessary and indispensable is part of the prejudice analysis

12

directed by *Newman-Green*). Under Rule 19, a party is necessary if:

> the court cannot accord complete relief among existing parties; [ ] or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Further, a necessary party is indispensable if the action cannot proceed without that party "in equity and good conscience." *Sullivan*, 117 F. Supp. 3d at 705 (quoting Rule 19(b)). If a nondiverse party is necessary and indispensable under Rule 19, then "diversity remains incomplete and the case must be remanded to state court." *Id.*

This Court joins Judge Cain and its own prior rulings[3] in finding the recent holdings of the Maryland District Court in *Mayor & City Council of Baltimore v. Purdue Pharma, L.P.*, No. GLR-18-800, 2018 WL 1963816 (D. Md. April 25, 2018), and *Anne Arundel Cty., Md. v. Purdue Pharma, L.P.*, No. GLR-18-519, 2018 WL 1963789 (D. Md. April 25, 2018), to be most persuasive on the severance question. In those cases, similar issues and arguments were raised and the court found that the claims were factually and legally intertwined. The plaintiffs alleged that all of the defendants contributed to the opiod crisis in Baltimore and Anne Arundel County, and the court found that the healthcare provider-defendants were necessary and indispensable, and therefore not severable under Rule 21. *Id.* at *5-6.

Moreover, the Court finds that Lexington County's claims satisfy the requirements for permissive joinder under Rule 20. This case involves claims against the Defendants for engaging in a scheme to fraudulently market and fuel the sale of opioids. As in the Baltimore and Anne Arundel County cases, the Court finds the similarities between the Defendants in this case outweigh any differences.

---

[3] *See Spartanburg County* (ECF No. 32 at 14); *Anderson County* (ECF No. 44 at 15).

As stated above in regard to the doctrines of fraudulent joinder and fraudulent misjoinder, the facts alleged in the Complaint are sufficiently intertwined with respect to all of the Defendants. The claims are not so separate and distinct that keeping them joined would result in an injustice. On the contrary, keeping the parties and claims joined will promote efficiency and minimize delay, inconvenience, and expense to the parties. If the Court were to order severance to obtain federal jurisdiction, Lexington County stands to suffer significant prejudice as the Defendants in each case would have the ability to shift blame and responsibility to an absent party. This is sometimes referred to as the "empty chair" defense. For example, the Manufacturer Defendants would be able to shift blame to the absent Distributor, Dealer, or Employee Defendants, thereby forcing Lexington County to defend the actions of the absent Defendants in order to substantiate its claims against the Defendants present in each case.

Finally, Plaintiff's pleading methodology and presentation of its theories of liability make it clear to the Court that this lawsuit seeks redress for the fallout of the opiod epidemic as a coherent whole. The Court declines to deconstruct Plaintiff's claims and theories, which are logically intertwined, in order to accommodate the forum preference of one group of Defendants.

### III. Conclusion

Accordingly, based on the foregoing, Plaintiff's Emergency Motion to Remand and for an Expedited Ruling (ECF No. 5) is **GRANTED**. The request that this Court grant a stay of this matter is **DENIED**, and the request that this Court sever certain Defendants to provide federal jurisdiction is **DENIED**. (*See* ECF No. 18.) It is further ordered that this action be remanded to the Court of Common Pleas of Lexington County, South Carolina.

**IT IS SO ORDERED**.

/s/Bruce Howe Hendricks
United States District Judge

October 5, 2018
Greenville, South Carolina